19-1312 and 19-2892 and we wonder if we have jurisdiction under those under these conditions so we'd like both parties to address that but obviously the appellant speaking first. So can we hear from you first? Yes, your Honor. Nonwithstanding the defendants voluntary dismissal of the counterclaims without prejudice the dismissal was made under an agreement that we would be able to appeal the decision and How does that agreement make any difference? With all respect Mr. Fleetwood you can't agree to subject matter jurisdiction and appellate jurisdiction if the case is still live in the district court that is it's without prejudice. Why is it of any moment that the two of you would like to have this decided at the appellate level? Well, I believe that the Third Circuit does not observe a strict rule against appellate review of cases where the parties have a stipulated to a judgment of dismissal. With prejudice? That's with prejudice. In this case, I believe that it is well said that when we signed the stipulation of the dismissal and the accompanying consent agreement both PECCIS and ITC intended that this appeal be allowed to go forward and I believe that in some circumstances the path to finality and appeal through that finality was shortened through an agreement of the parties. I believe in key versus prudential prop the court recognized that a party to a consent judgment may obtain appellate review if there is an explicit reservation of the right to appeal. What was your case site again? The case site was 203 F3D 218. This is a Third Circuit case in 2000. Well, I mean, the problem here is, you know, we bristle when it comes to piecemeal appeals. Yeah, they're disfavored. You know, it seems that the parties can go straight back to district court after assuming we find we have an appellate jurisdiction. The parties can go and litigate the counterclaim again in district court, right? Yes, you are. Okay. I think that may be a problem, but all right. Do you have anything else to say about our appellate jurisdiction or Judge Sirica? You look like you like. Am I correct that you're saying you are not abandoning your counterclaim? Our counterclaim? Or are you referring to ITC's counterclaim? Well, ITC's counterclaim. Excuse me, Your Honor. So is this question for me or for? Oh, okay. Yeah, I'm sorry. Well, I guess. Okay, go ahead. I can speak to this if the court wishes, but I'll defer to Your Honor. Well, it's a little unusual, but if you're going to weigh in, that could help us, I guess. Are you telling us that your client will not be pursuing the counterclaim? I'm not prepared to make that representation, Your Honor. Okay. All right. Thank you. All right. Well, let's continue on appellant's argument. Judge Jordan, Judge Sirica, do you have anything more on appellant's jurisdiction? No. Okay. All right. So you may proceed, counsel, repellent, that is. May it please the court. My name is Graham Fleewood, and I'm here on behalf of Rucker's Law Associates, arguing for PECAS USA. The issue on appeal before this court involves the lower court's dismissal of PECAS claims against ITC on a motion to dismiss and a summary judgment motion. We're well familiar with the facts and the procedural history. So let's look at each of the claims real quickly, if we can. Count one, the Consumer Fraud Act claim. The district court indicated this is a business-to-business transaction. You bought a bunch of magnets in bulk to resell. They were printed with things you wanted on them, but you got them in bulk and you sold them. How is that any different than any other fight between a supplier and a retailer? Well, we consent that the lower court erred in dismissing this claim because they considered what we bought from ITC to be ITC products, which we then resold. But this was not the case, and this was not what was pled in the complaint. The complaint explicitly states that the quote-unquote merchandise that PECAS bought from them was printing services. Well, the complaint also says pretty plainly that you were buying magnets from them, which is in fact the case. You bought a whole bunch of magnets and then you sold the magnets. You did get printing services. I put stuff on it for you that you wanted, but isn't it the case that we have to sort of look and decide as this is a purchase of things? Isn't that the obligation of the court to figure out what it is you bought? Well, we would contend that the fact that ITC provided PECAS with the medium on which the printing job was accomplished does not change the fact the services ITC provided to PECAS was why PECAS hired ITC in the first place. Moreover, the unconscionable act that was alleged in the complaint involves ITC's rendering of the printing services. The unconscionable act did not involve the magnets. Had the magnets not sticked, let's say, to a refrigerator, then we would concede that we do not have a claim under the New Jersey Consumer Fraud Act. But the unconscionable act here was ITC's use or taking of PECAS artwork and copying it, and this involved the printing services. So you think that a business that acquires goods or services from another business is a consumer under New Jersey law. That's your legal position, right? Our legal position is that a business can be a consumer and the services can be considered merchandise under the New Jersey Consumer Fraud Act. Is a reseller a consumer? A reseller can be a consumer, but the fact is PECAS did not resell the services that they got from ITC. They reselled the magnets, but as I stated before, the unconscionable act alleged was not with the magnets. It was with the services that were not resold. Picking up from what Judge Jordan had said before, if we take your argument about whether this was services or goods to its logical conclusion, could really any agreement to buy a product from a fabricator turn into a service contract or be considered a service contract? I don't believe so, because in this case, this wasn't ITC's product that was purchased. This was PECAS' product. It originated with PECAS. These designs of the magnets, what was printed on the magnets, it was all created by Alicia Kessler, the owner of PECAS. They contracted with ITC to print this onto the magnets. So in a way, we could describe the contract as a mixed goods and services contract, but I believe the complaint made very clear that the magnets were far over the goods. Had ITC not been able to provide printing services to PECAS, they would have never contracted with ITC in the first place. The magnets themselves were incidental to the main thrust of the contract, which was printing services. The complaint describes how ITC offered those services. Yeah, and what you ended up buying were some services and a whole lot of magnets, right? Exactly. Okay. Jumping to the trade dress claim from him, would you agree that your trade dress claim hinges on product design? We do agree that our trade dress claim hinges on the product design, but the fact is, the design and the unique and distinctive slogans that were printed on the magnets, which was PECAS' creation. Yeah, once you say and acknowledge, as I think you're right to do, because it's pretty clear that you say that in the complaint, isn't it in fact the case that under Walmart versus Samara Brothers, there can be no such thing as an inherently distinctive product design? I think that when it comes down to it, the product design, which was visible to these customers through the trade dress, which consisted of plastic packaging, made this product inherently distinctive to anybody. That's not answering my question. My question is, doesn't Samara Brothers directly refute what you're saying? How can you square the position you're taking with Samara Brothers, where the Supreme Court says product design is not inherently distinctive, cannot be inherently distinctive? In this case, the lower court similarly ruled as such, but where it erred was that it said that the dog bone design or the dog paw design was not inherently distinctive. What we are claiming was inherently distinctive was these slogans that were thought of by PECAS and put onto the product, which was readily apparent to the customers and which created actual confusion with these customers. Mr. Fleetwood, we just have to deal with what you pled. You pled, and you've acknowledged here that you've asserted that you have a product design and that it's inherently distinctive. Now, I'm just trying to square that with Samara Brothers, which I'm having a hard time doing. Given the time difficulties here, if my colleagues will indulge me, I do want to ask you a question or two, because I know your colleague is going to get into it and you've reserved two minutes for rebuttal, which may not be enough time to hit this then. Talk to us, if you would, about the assertion that what's gone on here is a fundamentally wrong and unconstitutional use of New Jersey state taxpayer monies to fund a private lawsuit. Can you respond to that argument that this is an abuse of the system because the Kesslers are enjoying taxpayer money to fight their fight against another private entity, and that unevens the balance field and that can't be consistent with the law in New Jersey. What's your response to that? Well, as the lower court held, and as we agree with this whole claim that they are entitled to attorney's fees because our law firm is somehow unconstitutional and entirely meritless and has no business being brought up in this forum, RLA is Barker's Law Associates. Where else would they bring it up? They're on the receiving end of a lawsuit that's being subsidized, and it's acknowledged to be being subsidized, by the state of New Jersey. Rutgers receives taxpayer money, and the law firm that's associated with the Rutgers Law School is being subsidized, so the Kesslers are paying, what, $50 an hour? A fraction of what it would cost them to do this in a regular suit. So why is this the wrong time or the wrong place to bring that up? Where else would they do it? If ITC has an issue with how Rutgers Law Associates receives its funding from the state of New Jersey, the appropriate place to bring it up would be an ethics review board, and we've shown and demonstrated this court that Rutgers Law Associates has received public and private approval from the New Jersey Supreme Court for its operations, and contrary to ITC's contentions, the New Jersey taxpayers are not subsidizing Rutgers Law Associates' representation of PECAS in any way. How can that be the case? It's in the record. It's in the record that you guys are, you've got, you're supervised by a professor whose money, whose salary is paid by the, in part by the state. It's, you use the facilities, you use the LexisNexis and the Westlaw, you use the utilities, you use all of the benefits of being free on campus. Like, what, how can that not be? How can you say that's not subsidy from the taxpayers? Well, in response to this, we would argue that the proper venue for ITC to bring this up would be an ethics committee, a New Jersey ethics committee or the New Jersey Supreme Court, which has already approved of our operations, of our operations, which consists of representing private clients at this rate. Okay. Well, this, this issue was never in front of the New Jersey Supreme Court, right? The constitutionality of using taxpayer monies in this fashion, that, that's not been before the New Jersey Supreme Court, has it? It hasn't been before the New Jersey Supreme Court in a, in a formal, in a formal setting, but the New Jersey Supreme Court and the administrative judge Grant has given Rutgers Law Associates public and private approval to continue its operations. And they were fully aware of exactly how Rutgers Law Associates was conducting its operations. Okay. Do you have anything more, Judge Jordan? No. Judge Sirica? Okay. Thank you. We'll get you on rebuttal. Mr. Coleman, we'll hear from you. Thank you, Your Honor. I'll start with the jurisdictional issue, as Your Honor mentioned. We do agree that there is, that this court may exercise appellate jurisdiction here. Our analysis is probably a little bit different from the appellant's here. I think that from our standpoint, the core distinction from some of the cases to which the court previously called concerns or all to the party's attention, such as the Borelli, the city of Reading versus Borelli, is that the appeal here concerns the claims that were dismissed with prejudice. It is true that the counterclaim was dismissed without prejudice. And I don't disagree that there would be an appellate jurisdictional issue here. Were some of the appellate issues, if some of the appellate issues were considered. It doesn't, it doesn't, does that really matter? I mean, if this case can go back and it can keep being litigated, then why doesn't the core concern that Judge Chigueras identified, that is piecemeal appeals, exist right on the face of the case? I think from my standpoint, I think that the piecemeal appeal issue cuts the other way. This is in that from our standpoint, from the appellee's standpoint, we were facing a situation where we could proceed with litigating a counterclaim, which is itself based and concerning facts that are in the primary claim, namely defamation, trade libel, allegations based on pet gifts, statements to third party that imagine this company, quote unquote, stole their design. And we would be expending the money to take this to trial while there's this forthcoming potential appeal of the dismissal of those claims. That's true in every case, right? And in any case, you could have somebody say, well, I really want you to answer this question for me right now, Court of Appeals, because I got this other question I still want to try, but you answer this one question for me now. That's the very definition of a piecemeal appeal, isn't it? I understand it. It could cut either way. I mean, but I don't understand how it could cut the way you want it to cut. That's that's what I'm struggling with. Well, I think I get the core point again from my from from our perspective is that all of the appeal issues concern the main appeal or I'm sorry, concerned that the claims brought by pet gifts. And from our standpoint, to be clear, we're not even obligated to refile our our counterclaim. We can, but that's but that isn't that the point? Isn't that the point, Mr. Coleman, that you can refile it? I mean, if if you really want this decided, maybe you and your client should decide and and tell the court promptly. We're abandoning that. We are there. We represent that this is not a claim we're going to pursue, because if you say you are going to pursue it or you reserve to yourself the right to pursue it. It's a little hard to understand how you can say I go ahead and decide. I do understand that, Your Honor. And while I and I simply cannot represent that we will not refile it, but nor can I represent represent that we will, because in the oh, we certainly believe that their appeal lacks substantive merits. Were it to be that were there to be a reversal that would it would it would be a reversal. It's a virtual certainty that that we would refile our counterclaim. So that's so it's I understand that the court's concern here. But I would simply note that there's that there's nothing square. There's the court's precedents are really not on point to this scenario where there's appeal from a from a plaintiff's claim where the where the concern regarding finality concern is solely related to a dismissal without prejudice of a counterclaim in this or in this scenario. And in our circumstance, our cross appeal likewise is not based in the counterclaim, but rather is solely tethered to the fee claim tertiary to the main to the to the pet gifts appeal. And of course, the district court denied the rule 54 B motion, right? That's correct, Your Honor. That's correct. I if I may, I want to answer the court's questions here. But just if I may pivot to the substance, the substantive issues first turning to to pet gifts appeal, I will perhaps I'll start with the dismissal of the trade dress claim. And as was referenced, this this is a product design case which falls under the parameters of Wal-Mart versus Samara Brothers. And and certainly the district courts, the basis of the district court's grant of summary judgment, which was specific to the lack of evidence of secondary meaning is is entirely correct. There is. Why don't you why don't you talk about their first claim, though? And the thing you heard Mr. Fleetwood arguing about, which is this was predominantly a services contract. And in their briefing, they indicate, you know, this was at least a fact question. What was predominating? And we should have the opportunity to get in front of a jury on that. And businesses can be consumers, too. What's what's wrong with the argument that this was they bought printing services and were a consumer in that respect? Right. There's there's to take their argument to it, to its logical conclusion. One can say that every manufacturer, every seller of goods, of widgets is performing a service in some sense, in some sense. And the mere fact that they use the word service in their complaint does not suffice. Under Twombly Iqbal to use those sort of labels and conclusions does not change the underlying factual matter of what of what they allege, which is that they were purchasing magnets for resale to others. And that simple fact answers both. And I think it built into your honest question is a little bit of the contract claim as to whether it's a good versus a service and also one of the Consumer Fraud Act as to whether this is a under which it is certainly true that a consumer can be a and I'm sorry that a corporation can be a consumer. But it's also true that a corporation can only be a consumer if they are the actual end user of the goods, as opposed to here, here, the allegations of the complaint, the factual allegations of the complaint expressly state in the contract out in the in the baseline allegations that they were purchasing these magnets for resale and merely saying that it's it was a service in some in some animal etymological sense of the word doesn't change the underlying fact that they were buying magnets and they were selling magnets. Yeah. Can. Can you talk about I don't know whether my colleagues want to ask about these counts, but but if if I can hold the mic for just a minute, can you talk about your attorney's fee claim? An assertion here, that piece of the appeal for the district court seemed to say a little bit of pox on both your houses. You know, you you didn't you went into this without letting them know that you're in the business yourself and would be a direct competitor. And therefore, you're, you know, reading a little bit between the lines. Yeah, there's there's dirt on both your hands. You can both bear your own costs. If if the court understood that after living with this case for a substantial period of time, why under an abuse of discretion standard of review, would we second guess that your your honor, that that that that one fact, that one finding that is in the one the one sentence in the court's order mentioning that it did not appear that imagine this company had told pet gifts that it was selling in competition. There's that while while that may have been the court's understanding, there is literally no support whatsoever in the factual records. And as the court's aware to properly actually a proper exercise of the court's discretion needs to be based on some facts in the record. And there is no fact in the record that states that, in fact, the record is actually to the contrary. The record shows that the very first sale that was made by pet gifts of these magnets was a purchase from from imagine this company's brochure that this was the testimony of both parties that there was a brochure, a 2005 brochure that was handed by by imagine this company to pet gifts. And then two years later, two years after after imagine this company had originated this design, that that's when that's when pet gifts first placed in order from this brochure. So it's it's eminently clear in the record that that that this was a that this was a design, that this was a product that was being marketed and sold in a brochure. And separate and apart from that, even if that were not in the record and it is that there was there was correspondence sent to to counsel for pet gifts at the very outset of this laying all of this out. If they were counsel that were new to the case and they didn't know this in this this letter to counsel is in the record. It attaches a copy of that brochure. It attaches all of this information. And well, let me ask you a question, Mr. Coleman, about further to attorneys fees on unreasonable manner. That's that's a key concept in deciding whether there should be fees. And your whole constitutional claim rests on the idea that it's an unreasonable manner for them to have this subsidized support. But can you point to any case anywhere where unreasonable manner has been interpreted to get at the underlying structure of a law firm or its funding or anything like that is an unreasonable manner always about always about the behavior of attorneys in or parties in a specific case? Your Honor, it's a it's a novel issue. I can't cite a case where this where this where this this sort of point has been brought to support a fee claim, but nor can I cite a case where it's been brought up to cite a fee claim and rejected. Frankly, I'm not aware of any circumstance in which a party litigant has obtained taxpayer subsidy for a private a private lawsuit against an out-of-state competitor. Speak to Mr. Fleetwood's assertion that you might have a beef, but this isn't the place to deal with it. Like this is if you want to talk to the Supreme Court in New Jersey about this, there are other avenues and mechanisms to bring it up. But this is this litigation isn't the vehicle for it. Yeah, that's a response. That's absolutely incorrect. The council refers to it as an ethical issue. We haven't even to raise this as an as an ethical issue. We're raising this purely and exclusively as a constitutional issue as tethered to to octane fitness and and and and the notion that a fee award is proper. If if if a case is lit not litigated in a reasonable manner. We raise zero ethical issues here here whatsoever. That's not that that's not an issue that we've put before the court and octane fitness is a patent case interpreting section 285 of the Patent Act that that's that's correct. However, however, this this court and Fairwind sailing apply that standard to the to the Lanham Act to the trade dress concept. So I'm going back in time with octane fitness, but but there's no later. There's no Lanham Act claim. It was their Lanham Act claim. There were New Jersey state claims in the in the complaint that's in the record that they did. They amend their complaint. Did they change it and assert something under 43a? No, your honor. However, the consistent precedent the consistent precedent of this court has been that the the New Jersey state trade dress claim has been interpreted consonant with the federal Lanham Act. So to get to get to what you want we'd have to say they didn't plead a Lanham Act claim. They didn't bring a Lanham Act claim, but we should interpret not just consistent with Lanham Act law, but we should we should take Lanham Act attorneys fees law, which is based on Patent Act law and insert it into a New Jersey state unfair competition claim. That's the route you want us to take. I don't think I will. I don't I don't think it's it's a matter of of making some separate finding some new finding that the that the that Lanham Act precedent govern governs here. That's always been the case. What would be an outlier is if the court were to find that this is the one and only one circumstance in which this court's precedent regarding Lanham Act claims suddenly doesn't govern a New Jersey trade dress claim or the state trade dress claim elsewhere. That's always been the case and it would be an outlier fees to on fees that there's no exceptions. I know there has that that has all that has that has always been the case. I searched high and low for an exception to that. I couldn't find one and so it would require this court. I got it. I'm sorry. I said I got I understand your position. Okay. And so and so just so further but further to that to that latter point once again, this is we're not aware of any circumstance where where a where it's where a state has where a party litigant has taken subsidies from the state to prosecute a claim against a competitor and further to your honor's question as to what the basis is again, this is the New Jersey Constitution, which is as a matter of fact, the New Jersey Constitution, which is which is specifically spelled out. I have no no just no doubt that there are other other constitutional issues that may also come to bear here. But we focused on that one because it's it's it's very it because from our from our standpoint, it's directly on point. There's maybe no appropriation of money shall be made in the state or county or any municipal corporation for the use of any society, association or corporation whatsoever. And that's article seven, section three, paragraph two and three. Yeah, we got your briefing on that. We understand your position. Okay. I'm going to add counsel. I'd be happy to entertain any questions that the court has. Okay. Otherwise, I'm I'm I'm content to rest of my brief. Judge Jordan, do you have any more questions? And Judge Sirica? No, I have no question. All right. Thank you, counsel. We'll hear from your adversary. He reserved two minutes. May proceed. You're on mute, Mr. Fleetwood. Sorry, your honor. The first part of my rebuttal, I would like to address the issue of trade dress, not extending the product design. I will quote from the lower court's decision on this matter. It says that although historically trade dress has referred to the packaging label of the product, it has been referred to the packaging label of the product. And this is that's that's true, Mr. Fleetwood. But you're missing the point. The question isn't whether product design can be distinctive. It's whether it can be inherently distinctive. The question is whether you have to have proven secondary meaning. I've been right. The position you've taken is it's inherently distinctive. And that's the question that was put to you earlier. Doesn't Samara Brothers say it cannot be inherently distinctive? You must prove secondary meaning. And I think in this case, we did prove secondary meaning, or at least we presented enough evidence of secondary meaning to survive a summary judgment motion. Miss Kessler testified in her deposition and declarations that she experienced actual customer confusion as to whether the product that was sold by ITC was Peck's product. You had you had nothing but her self-serving affidavit, right? She had. You put no evidence in the record but her self-serving affidavit about customer confusion, right? I believe that this evidence is enough for it to go to a jury. And the jury is to decide the strength of the evidence, not the lower court on a summary judgment motion. There was evidence there. And because it was a summary judgment motion, because the lower court disregarded this evidence, they erred in deciding to dismiss this case on this motion. Furthermore, I would like to address the New Jersey Consumer Fraud Act claim once again and just say that mixed goods and services contracts are well recognized in the law, and this court should treat this contract as such. And to my opponent's representations that if we were to take our position to logical inclusion, that all manufacturers would be held to be in a consumer type of relationship. I said that, but that's okay. Oh, excuse me. It's so easy. It's very fragile. If this court were to take that position to its logical inclusion, then we would argue that no kinds of mixed consumer, mixed goods or services transactions could be considered consumer transactions. To just support my position, I'll bring up one case that my opponent cited in his brief care distributors versus jam labels. In this case, care was a direct distributor of prepaid phone cards, and its opponent, A&M, was someone who distributed to care in order to sell. In this case, the court said A&M and care might well have been in the type of consumer transaction meant to be protected by the statute. Here is persuasive argument to this court that there could be, that there definitely is, that courts have recognized that mixed services and goods transactions can fall under the New Jersey Consumer Fraud Act when the fraud alleged or the unconscionable business practice alleged, as in this case, involves the services and not the goods that were then later retailed. All right, counsel, you're out of time. Judge Jordan, do you have anything more to ask? No. Okay, and Judge Sirica? No. Okay, thank you. We thank counsel for their excellent briefing and argument today. We'll take the case under advisement.